UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**VISITH TOBY PHANDANOUVONG**,                    Civil Case No. 3:13-CV-01798-KI

            Petitioner,

                              OPINION AND ORDER

                  v.

**RICK COURSEY,**

            Respondent.


      Anthony D. Bornstein
      Assistant Federal Public Defender
      101 SW Main Street, Suite 1700
      Portland, Oregon  97204

           Attorney for Petitioner

      Ellen F. Rosenblum
      Attorney General

Page 1 -OPINION AND ORDER

Samuel A. Kubernick
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

        Attorneys for Respondent

KING, Judge:

Petitioner, currently an inmate at Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons below, I deny his petition [2] and dismiss this proceeding with prejudice.

## PROCEDURAL BACKGROUND

A jury convicted petitioner of Murder with a Firearm and Unlawful Use of a Weapon for the October 24, 2004 shooting of Ernest Duncan.  Just before the trial started, the trial judge denied petitioner's motions to substitute counsel and reset the trial.  On November 5, 2009, the trial court sentenced petitioner on the murder conviction to life imprisonment with the possibility of parole after 25 years' incarceration and, on the unlawful use of a weapon conviction, to six months' incarceration concurrent to the sentence on the murder conviction.

On direct appeal, petitioner raised claims based on the trial judge's denial of his choice of counsel and admission of particular evidence.  The Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied his petition for review.

Petitioner filed a petition for post-conviction relief ("PCR") alleging a claim of ineffective assistance of trial counsel on numerous grounds, including failing to properly preserve the basis for petitioner's request to retain counsel.  After a hearing, the PCR trial court

Page 2 - OPINION AND ORDER

denied relief.  Petitioner appealed the decision on the grounds of ineffective assistance of counsel

for failing to present expert testimony on intoxication and the ability to form a specific intent.

The Oregon Court of Appeals affirmed the PCR trial court without opinion, and the Oregon

Supreme Court denied his petition for review.

Petitioner then timely filed this petition for habeas corpus in federal court.

## LEGAL STANDARDS

An application for a writ of habeas corpus shall not be granted unless adjudication of the

claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable

application of, clearly-established federal law, as determined by the Supreme Court of the United

States" or (2) was "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d).  The state court's findings of fact

are presumed correct, and a petitioner bears the burden of rebutting the presumption of

correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d) is a "'guard against extreme malfunctions in the state criminal justice

systems, not a substitute for ordinary error correction through appeal.'"  Hibbler v. Benedetti,

693 F.3d 1140, 1148 (9th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770,

786 (2011)) (additional internal quotation omitted), cert. denied, 133 S. Ct. 1262 (2013).  "'[T]he

question under AEDPA is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable–a substantially higher

threshold.'"  Id. at 1146 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).

A state court acts "contrary to" clearly-established federal law if it arrives at a conclusion

opposite to that reached by the Supreme Court on a question of law or if it decides a case

differently than the Supreme Court on a set of materially indistinguishable facts.  Williams v.

Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495 (2000).

A state court decision is an "unreasonable application" of clearly-established federal law

if the court:  (1) identifies the correct governing legal principle from Supreme Court decisions,

but unreasonably applies that principle to the facts of the prisoner's case; or (2) either

unreasonably refuses to extend the governing legal principle or unreasonably extends it to a new

context where it should not apply.  Id. at 407, 413.  Under this standard of review, a federal court

may not issue a writ of habeas corpus because it concludes the state court applied

clearly-established federal law erroneously or incorrectly.  The state court decision must be

"objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003).

## DISCUSSION

Petitioner alleges two grounds for relief:

> Ground One:  1. Did the trial Court erroneously deprive Defendant of his
> choice of counsel?  2. Did the trial court erroneously admit into evidence prior
> bad act evidence?  3. The Trial Court's Error in Admitting the Proffered Evidence
> was not Harmless and Requires a reversal of the Verdict Rendered.

> Ground Two:  The post-conviction court erred in denying relief where
> petitioner established that trial counsel failed to present expert testimony on the
> subject of intoxication and the ability to form intent.  This would have bolstered
> his theory that petitioner was, at most, reckless, and therefore not guilty of
> Murder.

Pet. for Writ of Habeas Corpus 4-5, ECF No. 2.

I.    Unargued Claims

Petitioner only briefed the portion of Ground One concerning his right to choice of

counsel.  A habeas petitioner is denied relief on a claim if he neither sets forth the legal standards

for the issue nor attempts to meet them.  <u>Davis v. Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004)

(petitioner has the burden of proving by a preponderance of the evidence that he is entitled to

habeas relief).  Consequently, petitioner failed to meet the burden on his claims concerning the

admission of bad act evidence and trial counsel's failure to present expert testimony on

intoxication.  I deny habeas relief on these claims.

II.    <u>Choice of Counsel</u>

    A.    <u>Facts</u>

The court appointed the Metropolitan Public Defender to represent petitioner on

January 21, 2005.[1]  Eric Butterfield, sometimes assisted by Paul Aubry, represented petitioner at

a scheduling appearance on February 2, a Miranda hearing on May 24, a release hearing on

April 8, and a July 19 hearing on a motion to continue the trial date.  At this last hearing, the

judge continued the trial date and set the jury orientation for September 22 and the jury selection

for September 27.

On September 22, the day of the jury orientation, Butterfield filed a Motion to Withdraw.

The trial judge held a hearing and asked petitioner why he wanted a new attorney.  Petitioner

complained Butterfield had not met with him enough to discuss trial strategy, evidence, the

findings of a forensic specialist, and the results of a psychological evaluation.  Petitioner

estimated he had met with Butterfield about five times.  He complained Butterfield had not made

enough effort to meet with Laotian community members who were trying to help petitioner with

the case.  The trial judge explained Butterfield was constrained by the way Measure 11 limits

plea bargaining after a murder indictment, to the effect that additional meetings with defense

---

[1]  All dates took place in 2005 unless stated otherwise.

counsel would not help petitioner's situation.  Petitioner explained he felt in the dark because he

did not even know what days he would be in court.

The trial judge confirmed Butterfield had discussed the events on the night of the murder

with petitioner and petitioner's videotaped statement to police after his arrest.  The trial judge

explained the only other thing a defendant can do to help his counsel is decide whether he will

testify and, if necessary, prepare.  But the trial judge explained to petitioner the decision whether

to testify would be made during trial, not beforehand.  The trial judge also cautioned petitioner

not to discuss the case with his mother's legal advisor, a friend of the family, because he was not

formally representing petitioner and might not have been on the list of attorneys qualified to

defend a murder charge, making his advice suspect.  Although the jury orientation was to begin

that day, followed five days later by jury selection, the trial judge advised petitioner the evidence

would not begin for a week and a half, leaving plenty of time for petitioner to speak with

Butterfield, whom the trial judge believed was highly qualified.  According to the trial judge, the

trial was expected to be uncomplicated, with few legal issues, even though the outcome would

have a major impact on the people involved.  The trial judge denied Butterfield's Motion to

Withdraw and told petitioner if he located counsel to retain, he should advise the court

immediately so the judge could decide whether to allow retained counsel to participate in the trial

starting in five days.

On September 27, the morning jury selection was to begin, Clayton Lance filed a

Stipulated Substitution of Counsel seeking to substitute Lance, as retained counsel, for

Butterfield.  Lance also filed a Motion to Reset Trial.  In the accompanying affidavit, Lance

explained petitioner's family retained him at 5:00 p.m. on September 24 because petitioner and

his family had serious concerns about Butterfield's case management, client contact, trial

investigation, trial knowledge, preparation, and potential presentation.  Lance stated he was not

prepared to start trial that day but petitioner was willing to waive his speedy trial rights.  Lance

would be able to try the case in early December.

When court convened that morning, the trial judge allowed petitioner to make a

statement.  Petitioner protested the trial going forward because he had not had any strategy

conferences with Butterfield and did not know how he planned to defend the case.  In a brief

statement, the trial judge denied Lance's motion to substitute for Butterfield.  According to the

trial judge, the county judges held a meeting and took a vote deeming Lance incompetent to

defend a murder case.  The trial judge suggested if the family had retained a competent attorney,

"maybe it would be different."  Tr. 98.  He then started jury selection.

The PCR trial court received evidence on the choice of counsel issue.  Butterfield filed an

affidavit stating he met with petitioner no fewer than ten times to discuss all aspects of his case,

including the police reports, trial strategy, potential evidence and witnesses the defense could

offer, and possible outcomes of the case.  Butterfield also met several times with the attorney

acting as the family's legal advisor, Ronault Catalani.

According to Butterfield, petitioner was resistant on several occasions to get into the

details and have any difficult conversations related to his case, but Butterfield was eventually

able to force the discussions.  Butterfield had experience working with experts on intoxication

issues and did not believe petitioner had a valid intoxication defense.  He was concerned

focusing on a losing argument would undermine the ability to get a compromise verdict of

manslaughter instead of murder.  Butterfield told petitioner that no one would acquit him on the

basis of intoxication and the inability to form specific intent, and petitioner never said he wanted

an intoxication expert.  Petitioner did request a specific expert on cultural-psychological issues.

Butterfield obtained a different expert on the subject and met with the prosecutors, along wtih

Catalani, in an unsuccessful effort to get the State to extend a favorable plea offer to petitioner.

Butterfield also defended his decision concerning evidence of the Greek Cusina conflict, his

decision not to call any of the witnesses on the defense witness list, and his decision concerning

petitioner's use of racial slurs.  Butterfield wanted to focus on his theory of the case–that

petitioner was the kind of person that might be angry and reckless enough to shoot into a crowd

without forming the specific intent to kill someone.  Butterfield was also concerned about losing

credibility with the jury.

Petitioner testified at the PCR trial that Butterfield visited him fix or six times before

trial.

B.    Analysis

Petitioner claims the trial judge violated his Sixth Amendment right to be represented by

counsel of his choice when the judge denied his motions to substitute retained counsel for

appointed counsel and reset the trial.  He argues habeas relief is available because the trial

judge's rulings were contrary to, and an unreasonable application of, clearly-established law.

Petitioner contends the trial judge ignored the fact that Lance would have been ready for trial in

slightly over two months, exhibited an arbitrary focus on the court's calendar in the face of a

justifiable reason for delay, and did not conduct an adequate inquiry into the problems between

petitioner and Butterfield.  Petitioner argues he should not be faulted for any delay in seeking

new counsel because he became more concerned about the lack of communication as the trial

Page 8 - OPINION AND ORDER

date approached.  Petitioner contends the competency of his proposed retained counsel should play no role in his right to counsel of choice.

Respondent argues the trial judge did not violate petitioner's Sixth Amendment right to counsel of choice.  Respondent contends petitioner only expressed general complaints about Butterfield's unpreparedness for trial and the number of times the two had met.  In light of the length of time between arraignment and the trial, the late date of the motions, and Lance's inability to proceed to trial for approximately two months, respondent contends the trial judge's refusal to substitute counsel and reset the trial was not an unreasonable application of United States Supreme Court precedent.

The Sixth Amendment "guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds."  Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-25, 109 S. Ct. 2646 (1989).

> [T]he Court has established that a trial court requires "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.'  As such, trial courts retain the discretion to 'make scheduling and other decisions that effectively exclude a defendant's first choice of counsel."

Miller v. Blacketter, 525 F.3d 890, 895 (9th Cir. 2008) (citation omitted)  (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 152, 126 S. Ct. 2557 (2006)).  Three factors are relevant to a trial court's decision to deny a defendant's motion to substitute counsel and postpone the trial date:  (1) whether new counsel has been retained and is ready to proceed on the scheduled trial date; (2) whether current counsel is sufficiently prepared for trial; and (3) the closeness of the motion's filing to the scheduled trial date.  Id. at 896-98.  A defendant does not have to prove

prejudice to establish a Sixth Amendment violation if the right to be assisted by counsel of defendant's choice is wrongly denied. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. Gonzalez-Lopez, 548 U.S. at 148.

Petitioner argues the trial judge based his ruling on the belief Lance was incompetent to try the case, and thus applied a rule contradicting Supreme Court precedent distinguishing between the right to counsel of choice and the right to effective assistance of counsel. See id. at 148 (comparing "the right to counsel of choice–which is the right to a particular lawyer regardless of comparative effectiveness–with the right to effective counsel–which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed").

When the trial judge denied Butterfield's motion to withdraw during the September 22 hearing, petitioner had not retained Lance yet so his competency was not addressed. The trial judge's ruling on that date was based on Butterfield's adequate preparation for trial and concerns about the fast-approaching trial date. During the September 27 hearing immediately before jury selection began, the trial judge made the comment about Lance's competency during his very brief denial of the motions to substitute counsel and reset the trial; his entire ruling consisted of only five sentences. The trial judge clearly had made up his mind the trial would proceed that morning as scheduled, whatever the competency of the proposed substitute counsel. I find the trial judge did not apply a rule contradicting Supreme Court precedent.

Additionally, I am aware of no Supreme Court decisions based on a set of materially indistinguishable facts. Thus, the trial judge's decision is not contrary to clearly-established Supreme Court precedent. Williams, 529 U.S. at 405-06 (a state court's decision is contrary to

clearly-established federal law if the state court applies a rule that contradicts the governing law set forth by the Supreme Court or the state court confronts facts materially indistinguishable from relevant Supreme Court precedent and arrives at a different result). I will turn now to whether the trial judge's decision was an unreasonable application of clearly-established federal law.

The facts in Miller are very similar to petitioner's situation. Miller's father offered to pay for retained counsel the day before the trial was to start. On the morning of trial, Miller's appointed counsel filed a motion to withdraw and postpone the trial. Miller was no longer willing to speak to appointed counsel. He explained to the trial judge his appointed counsel did not meet with him until two days before trial, leaving Miller "completely in the dark" about the status of his case, she had not arranged for any defense witnesses, and she had no defense prepared. Miller, 525 F.3d at 893. The judge confirmed the two had met on each of the two previous days and Miller knew of no witnesses who could testify on his behalf. The judge commented appointed counsel was one of the most competent criminal defense attorneys in the county and appointed counsel's motion to suppress was appropriately prepared, even though unsuccessful. Miller's father was trying to locate counsel and hoped a 30-day continuance would be adequate. The trial judge denied the motion but delayed the trial from that day, Friday, to the following Tuesday to allow additional time for Miller to work with appointed counsel. Id. at 892-93.

The Ninth Circuit concluded the trial court did not exceed the court's "discretion to balance Miller's right to counsel of choice against concerns of fairness and scheduling." Id. at 898. The Ninth Circuit reasoned that new counsel had not yet been retained, necessitating a continuance of at least 30 days, the trial judge had reasonably concluded appointed counsel was

Page 11 - OPINION AND ORDER

sufficiently prepared, there was no conflict of interest, Miller did not file the motions until the

morning trial was set to start, which was 68 days after the grand jury indicted Miller, and Miller

did not express any dissatisfaction with appointed counsel until the day his father offered to pay

for retained counsel.  Id. at 896-98.

The primary complaint of both petitioner and Miller was their counsels' lack of

preparation and communication of trial strategy.  Here, the trial judge questioned petitioner about

his request for new counsel and determined there was no conflict of interest, as with Miller.  In

addition, the trial judge concluded Butterfield had performed the usual preparations, including

interviewing petitioner, and was prepared to provide a defense, again as with Miller.  Miller had

not retained new counsel when his appointed counsel moved to withdraw and reset the trial for

30 days.  Here, Lance was retained but was not prepared to try the case for just over 60 days, so

the trial would have to be reset.  Both Miller and petitioner filed their motions very close to the

scheduled trial dates–on the days of jury orientation and then the morning of trial for petitioner

and the morning of trial for Miller.  Miller filed his motion just over two months after being

indicted; petitioner waited eight months before seeking new counsel.

I see little to distinguish petitioner's situation from Miller.  Indeed, petitioner's proposed

counsel required over 60 days to prepare for trial while Miller hoped to retain counsel and be

prepared for trial in 30 days, although the court acknowledged the timing was uncertain.

Likewise, Miller sought new counsel just over two months after being indicted while petitioner

waited over eight months from his first appearance.  In short, petitioner waited a longer time than

Miller before bringing his concerns to the court and petitioner's proposed new counsel possibly

required a longer trial setover than Miller's.  Both men had concerns about lack of trial

Page 12 - OPINION AND ORDER

preparation and communication of trial strategy and neither had an actual conflict.  As in <u>Miller</u>, I also find the trial court did not exceed its discretion to balance petitioner's right to counsel of choice against scheduling concerns and thus did not violate petitioner's Sixth Amendment rights.

The trial judge's decision was not objectively unreasonable and did not violate petitioner's Sixth Amendment right to choice of counsel, and thus was not an unreasonable application of clearly-established federal law.

In sum, the trial court's decision is neither contrary to, nor an unreasonable application of clearly-established law.

C.    <u>Request for a Hearing</u>

Alternatively, petitioner asks the court to conduct an evidentiary hearing with testimony from the judges who voted in the meeting that Lance was not competent to try the case. Petitioner claims this is the only way to determine the entire basis for the trial judge's ruling. Because the meeting was held in secret, petitioner contends he cannot be faulted for a failure to develop the details of the meeting.

Respondents contend the trial judge's reasoning, as well as his statement about the judges' meeting, is contained in the state court record so no evidentiary hearing is necessary.  In addition, respondents note petitioner has not explained why he did not develop in state court the factual basis for his contention about the meeting.

Review of a claim under § 2254(d) is typically "limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398, (2011).  28 U.S.C. § 2254(e)(2) restricts the availability of evidentiary hearings in federal habeas corpus proceedings as follows:

Page 13 - OPINION AND ORDER

(2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Here, petitioner was informed of the meeting by the trial judge when he refused to substitute counsel, but petitioner did not develop the factual basis of his claim resting on the meeting while still in the state court proceedings.  Petitioner has failed to provide any explanation for why he could not learn the content of the meeting's discussion at his PCR trial. This is not a situation where petitioner was unaware the meeting took place until the state proceedings had ended.  See Insyxiengmay v. Morgan, 403 F.3d 657, 670-71 (9th Cir. 2005) (habeas petitioner did not fail to develop the factual basis of his claim concerning a confidential informant because the court barred defense counsel from an in camera hearing about the informant, refused to allow defense counsel to submit questions for the hearing, and prohibited counsel from informing petitioner about the hearing or the existence of the informant).  None of the exceptions in § 2254(e)(2) apply.  Accordingly, § 2254(e)(2) bars petitioner from having an evidentiary hearing in federal court.

**CONCLUSION**

Based on the foregoing, I deny petitioner's habeas corpus petition [2] and dismiss this

proceeding with prejudice.  Because petitioner has not made a substantial showing of the denial

of a constitutional right, a certificate of appealability is denied.  See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

Dated this _____15th_____ day of December, 2014.


     /s/ Garr M. King_____
    Garr M. King
    United States District Judge